STATE OF VERMONT

ENVIRONMENTAL COURT

Appeal of McGrew, <u>et al.</u>           }           Docket No. 199-10-04 Vtec

}
}
}

### <u>Decision and Order on Appellants' Motion for Summary Judgment</u>

Appellants Barbara McGrew, Daniel Fivel and Jowall Limited Partnership appealed from a decision of the Development Review Board (DRB) of the City of Burlington regarding a project involving property at 114 College Street, 126 College Street and 95 St. Paul Street. Appellants are represented by Andrew R. Strauss, Esq. and Norman Williams, Esq.; Additional Appellant Leonora, LLC is represented by Robert C. Roesler, Esq.; Appellee-Applicant Investors Corporation of Vermont is represented by Carl H. Lisman, Esq. and Christine A. Jensen, Esq.; and the City is represented by Kimberlee J. Sturtevant, Esq. Appellants have moved for summary judgment on all but Questions 1 and 9 of the Statement of Questions . The following facts are undisputed unless otherwise noted.

Appellee-Applicant owns three adjacent parcels of property at 114 College Street (with frontage on Pine Street and on College Street), 126 College Street (with frontage on College Street) and at 95 St. Paul Street (with frontage on College Street and on St. Paul Street), in the Central Business District zoning district. Appellant proposes to construct a ten-story mixed-use building on the 114 College Street parcel, including a bank automatic teller machine drive-through and two other commercial office spaces on the ground floor, fifty residential units, with parking located within the building on the ground floor and extending two floors below the ground floor.

Question 2:

The essential issue regarding this proposal is whether Appellee-Applicant may merge three adjacent lots and construct an additional building on one of the three former lots using the density calculations applicable to the resulting lot.

The Court can find no prohibition in the Zoning Ordinance against the merger of lots by an applicant, regardless of whether some of the lots are already built upon. That is, we find no provision in this particular Zoning Ordinance requiring only one principal building or use per lot. To the contrary, the Zoning Ordinance provides for mixed uses in the Central Business District.

In the present case, Appellee-Applicant proposes to combine the lots for the purposes of the present application and to be bound by that treatment in any future planning and zoning applications or decisions. This proposal is neither a Planned Residential Development nor does it represent a transfer of development rights. Rather, the combined lot as a whole will not be entitled to any greater level of development than that allowed under the Zoning Ordinance for that combined lot and its existing and proposed uses and buildings. Accordingly, Appellants' motion for summary judgment must be denied and summary judgment must be granted to Appellee-Applicant on this issue.

Question 5:

The proposed project meets the requirements for a height bonus under §5.3.15(a)(1) if at least 20% of the units (that is, ten of the fifty units in the proposed building) are affordable to low and moderate income households as defined by state and federal regulations. The project as proposed meets those requirements if moderate-income households are defined as having income at 110% of median income, but not if moderate-income households are defined as having income at 100% of median income.

The definitions of low-income and moderate-income households in Article 30 of the Zoning Ordinance refer to income not exceeding 80% and 110%, respectively, "of the median income for the Burlington MSA [Metropolitan Statistical Area], as set forth in

regulations promulgated from time to time by the U.S. Department of Housing and Urban Development pursuant to [federal statute]." If these definitions are read together with the definition of "median income" in Article 30 of the Zoning Ordinance, it is apparent that the phrase "as set forth in [federal] regulations" refers to the methodology for calculating the median income in the Burlington Metropolitan Statistical Area, and not to which percentage of median income is used by state or federal regulations to define low-income or moderate-income households. The Zoning Ordinance uses 80% and 110% of median income; it does not incorporate by reference either the state or the federal definitions[1] of low-income or moderate-income households. Moreover, even if it had incorporated those definitions by reference, we would have to look to the federal and state definitions as they had existed at the time of the last revision of the Zoning Ordinance, rather than at the latest revision of the federal and state definitions. Accordingly, Appellants' motion for summary judgment must be denied and summary judgment must be granted to Appellee-Applicant on this issue.

Question 6:

The project meets the requirements for a height bonus under §5.3.15(a)(2) if it provides public parking spaces in an amount no less than 10% above the total parking requirements of the new building, as this section is written to analyze the height bonus on

a building-by-building basis. Also see §10.1.4 with reference to existing structures. The total parking requirements for the new building, without regard to any requested waivers, are 113 spaces, so that 11 public parking spaces must be provided to qualify for the §5.3.15(a)(2) height bonus. Appellee-Applicant proposes to provide 11 spaces in the new building for public parking, so that the project meets the requirements for the §5.3.15(a)(2) height bonus. As Appellee-Applicant is not proposing to use any of the parking in the existing buildings to meet this requirement, we need not analyze whether the existing buildings conform or not to the current parking requirements in the Zoning Ordinance. Accordingly, Appellants' motion for summary judgment must be denied and summary judgment must be granted to Appellee-Applicant on this issue.

Question 7:

Material facts are in dispute as to the design and materials of the structure to enclose the rooftop mechanical features; and as to whether the rooftop structure is being designed or whether any other rooftop features are being added or redesigned to qualify as a rooftop greenhouse or an ornamental feature. In presenting this issue at trial, the parties should be prepared to address all three of the following sections of the Zoning Ordinance: §30.1.2; §5.3.13(d); and §6.1.11(g), as the Court will have to reconcile them to the extent possible.

Question 8:

Material facts are in dispute as to whether the project meets the standards for a parking waiver under §10.1.19, including facts as to the usage patterns for the existing buildings, the usage patterns of the parking provided in the existing buildings, and the usage characteristics of affordable residential units as distinguished from full price residential units.

Question 9:

The question of whether the layout and design for the proposed parking garage meets the design review, site plan approval, major impact development review, and conditional use standards relating to its effect on traffic, access and on-site circulation (§§6.1.10(d); 7.1.6(a) and (b); 13.1.6(e) and 17.1.5(a)(3)) was not submitted on summary judgment, and remains for the hearing on the merits of the application.

Questions 3 and 4:

The project is entitled to calculate its density by applying a floor area ratio (FAR) of 3 to the entire project parcel if more than 50% of the parking spaces for the project (that is, the entire combined property) are "located in an underground structure."

Material facts are in dispute as to how many of the existing parking spaces and how many of the spaces proposed for the new building are located how far below the finished grade, to allow the Court to determine how to interpret the undefined term: underground structure. It appears that the City's Planning and Zoning Department interprets it to count any space whose pavement is below grade, but nothing has been provided to indicate how or whether the City's DRB has interpreted this provision, or whether it should be interpreted instead to mean that the entire volume of a parking space must be below the finished grade for it to be considered below grade, or whether some percentage of the structure itself must be below grade. Material facts are in dispute, or at least have not been provided, regarding whether any nationally-recognized association of planners, or architects, or commercial garage designers, or any other relevant institution, uses a recognized definition of "underground structure." Most importantly, no evidence or argument has been presented regarding the policy underlying this provision, to assist the Court in applying §1.1.2 of the Zoning Ordinance to the interpretation of §5.2.6(e)

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is DENIED and summary judgment is granted to Appellee-Applicants on Questions 2, 5 and 6; and Appellants' Motion for Summary Judgment is DENIED as to Questions 3, 4, 7 and 8 as material facts are in dispute as discussed above. Summary judgment was not requested for Questions 1 or 9; material facts remain disputed as to those two questions.

Accordingly, the trial will proceed as scheduled on Questions 1, 3, 4, 7, 8 and 9. As discussed at the March 24, 2005 telephone conference, the trial is not expected to take more than a single day. As provided in the March 23, 2005 entry order regarding the motions to compel and for protective order, the trial remains scheduled for the full day of April 8, 2005, unless the parties agree to or the Court orders the rescheduling of the trial.

In considering these scheduling issues in preparation for the telephone conference now scheduled for 4:00 p.m. today, the parties should consider the following. Normally, if the trial were held as scheduled on April 7 or 8, we would provide for the filing of requests for findings and memoranda of law on about April 20, and for the filing of responsive memoranda on about April 29 or May 2. Given the extensive preparation this case has had, if we were to hold the trial on April 28, we would require requests for findings and memoranda of law to be filed at trial, with any necessary responses (not

already addressed in the summary judgment motions or in the initial trial memoranda) to be filed on May 4.  We would also require these documents to be provided in electronic form by email to the Court.  Using this schedule, the appeal would be under advisement with the Court at approximately the same time under either scenario.

Done at Berlin, Vermont, this 25th day of March, 2005.

_____

Merideth Wright

Environmental Judge

---

[1] Appellants assert that the 2005 federal and state definitions of moderate-income households are set at 100% of median income.